by Scott v. McDonald Okay, who's now? Good morning. You may proceed. May it please the court, Jennifer Leigh Brocknall for Veteran Appellant Curtis Scott. This appeal is about whether the Veterans Court has discretion to refuse to substantively address an issue appealed below. In particular, Mr. Scott appealed the Board's failure to comply with the requirement that it must provide an adequate statement of reasons and bases that it satisfied its duty to assist. There are two independent reasons why the Veterans Court erred. First, the Veterans Court does not have discretion to refuse to consider this issue as a matter of law. And second, the testified... Do we have jurisdiction to be hearing this case? Are we talking about an application of law to facts? No, Your Honor. This is not an application of law to facts. This is whether or not, as a matter of law, the Veterans Court has the discretion to refuse to consider an issue. And under SIMS, the Supreme Court case that addressed social security benefits, a social security benefits appeal, an agency review of a decision where it's non-adversarial and here where it's proclaimant should not have an issue exhaustion, judicially created issue exhaustion applied to that case. Could I understand the facts here? If I understand correctly, the request for a hearing was raised the first time before the Board, but then it wasn't raised in the first appeal to the Veterans Court. Yes, Your Honor. That is... And the second time around, it wasn't raised before the Board, but it was raised before the Veterans Court. Is that correct? I respectfully disagree, Your Honor. Below in the Board, that issue was at issue in front of the Board. No, I understand your contention that it was at issue, but it wasn't explicitly raised before the Board the second time around, right? Yes, Your Honor. It was not explicitly raised. But in the record at A183, the recertification document shows that Box 10 was checked, showing that an appeal, that a hearing was requested and denied. This issue was squarely in front of the Board. And on remand from the Veterans Court, the Board has an obligation to re-adjudicate the matter anew. And this issue was reasonably raised by the record. It's a statutory requirement that the Board adequately provide an adequate statement of reasons and bases. And the Board did not do that. The fact that this issue was a similar error occurred previously, does not change the fact that this issue did happen, that this error did happen in front of the Board in 2012. Well, I guess the question is, we've interpreted Sims some, and we have the Robinson case which says that certain things raised by the record have to be addressed by the Veterans Court, the question or the Board. And the question is here, does this fall into that category? It does seem to be a procedural objection to the lack of hearing, which is a little bit different than requiring that the Board and the Veterans Court consider certain pieces of evidence that might bear on the question of whether a particular condition was service-connected. The question I have is, how far should we go in saying that they have to scour the record to find every possible issue? Well, Your Honor, under Robinson, this Court, Your Honor, wrote that if it's reasonably raised by the record, and the form 9, the appellant, the Veteran checked the box that they were appealing all issues, then there is not an issue exhaustion problem. Under Robinson, the Veterans Court held as a factual issue that it wasn't reasonably raised by the record. Here, the Veterans Court has not addressed at all whether this issue was reasonably raised by the record. And as a matter of law, it is reasonably raised by the record. The Board specifically addressed this, though with clear error, and the Veterans Court should have come to a decision whether or not as a factual issue. The issue was raised, and it was addressed, and it wasn't raised after that. I mean, your client had two different occasions upon which to raise the issue, but chose not to do it, or didn't do it. So, Your Honor, had the Veteran lost in the first appeal to the Veterans Court, this issue would have been waived. But because the Veterans Court remanded, the Board had an obligation to re-adjudicate anew. And at that time... Everything? All procedural issues? Anything reasonably raised by the record. Well, that's the problem here, right? Your client did not raise the issue before the Veterans Court. Your Honor, before the Board, the client explicitly told the Board that he was incarcerated. And the Board scheduled him for hearing a full year before his parole date, his first possible parole date. And the Board did not do anything to assist, as required to comply with the duty to assist. And your client argued against that at that point, but not after that. Your Honor, at that point, the client was pro se. And at that point, the client, Mr. Scott, said to the Board, I was unable to obtain transportation, and please reschedule. After the issue went up to the Veterans Court and got remanded, the Board explicitly addressed this issue. They said that Mr. Scott requested a hearing, failed to attend, and subsequently told the Board that he was incarcerated, which is clear error. And the Board did not address anything that it did in terms of helping Mr. Scott for perhaps getting a teleconference set up at the jail or anything like that. The Board did nothing. The record shows that there was nothing done to assist Mr. Scott. When the Board addressed it in 2012, the Board had an obligation to find anything reasonably raised by the record. This is reasonably raised by the record. The record is clear as to the order of events. And there is a systematic, a pattern of the Board, of the VA, denying veterans their hearings when they're incarcerated. So when the Veterans Court remanded in the first instance, why should we view that as addressing the issue? Your Honor, the precedent in the Veterans Court is that when they remand, the Board has an obligation to look at all issues reasonably raised by the record. And there's no notice to the veteran, unless this court decides it, there's no notice to the veteran that he had an obligation to raise every single thing that he could possibly raise. And he would have been foreclosed from arguing in the future that an error similar to a prior error was not properly exhausted. There needs to be some kind of notice for a new rule and publication in the Federal Register and a form provided to the veterans if there's an obligation, if there's an issue exhaustion requirement that's going to be imposed on veterans. And it's inappropriate under SIMS for the Veterans Court to have created, to create and to apply an issue exhaustion requirement without giving proper notice prior to the veterans. If Your Honors have no further questions, I'll save there. Thank you. Okay. Thank you. We'll reserve the rest of your time. Mr. Grimaldi. Good morning, Your Honors. May it please the Court. We respectfully request that the Court affirm the decision of the Veterans Court Your Honors, discuss. The issue was raised the first time before the Board, correct? Well, the motion was to the Board. So back in, I'm going to plot my timeline here, Your Honor. Back in 2008, the motion was made to the Board itself to have the schedule. So the issue was raised before the Board at that time. That's correct. So if they had then appealed and objected to the lack of a hearing, then the Veterans Court would have been obligated to consider. That's correct, Your Honor. Totally different case in that situation, Your Honor. So I guess what I'm wondering about is what the scope of Robinson is and when issues have to be raised and when the Board or the Veterans Court has to consider them because they're there in the record. Could you help us with that? Sure, Your Honor. And we can turn directly to Robinson for this, Your Honor. Robinson says that there really needs to be a balancing here, Your Honors. And I'm looking at pages 1361 to 1362, Your Honors. Basically what Robinson is saying is that, yes, the court must read a claimant's filings liberally. That does not excuse the individual of the obligation to actually raise those issues ahead of time, beforehand. There's no question that he raised the issue at one point. Well, he made the motion, Your Honor, but he didn't say that the motion failed in its duty to assist. That's the actual issue that is now before the Board. He did raise it before the Board. Well, he raised it. I'm sorry, Your Honor. Maybe there's a miscommunication there. He did raise the motion saying, I would like to ask my---- Because I want to hear it. Yes, correct. And he erroneously denied a hearing, and then he came back and said, I'd like to hear it, like a rescheduled hearing. Well, they gave him a hearing, Your Honor. He did not attend. Well, he was in jail. Correct. In fact, he said they wanted to have a, what is it, like a conference call hearing. A teleconference in Houston, Your Honor. Correct. But he was in jail, so he could not attend, and he said, no, you have to show up in person, and he was in jail. Well, Your Honor, he had said that he was in jail, yes, told them ahead of time, did still request a videoconference hearing, which would have occurred in Houston, and he's in jail in, I believe, Huntsville, two different places. He was notified twice, as well as his representative. At this time, Mr. Scott was not represented by counsel, but he had a representative, that if he could not attend his hearing, he needed to timely request a rescheduling two weeks in advance. He did not do so, despite being told that twice. Well, suppose we disagree with you and we say, yep, he raised it before the Board the first time around in 2008. He asked for a hearing. He didn't need to do anything more to preserve the issue, and the question is whether he needed to raise it again thereafter. Let's suppose we say that, okay? Under those circumstances, did he have to raise it again, or was it sufficient that he raised it the first time before the Board? You mean if he had actually raised it on appeal to the Veterans Court the first time? No, he raised it before the Board. Correct. But he didn't explicitly argue it the first time before the Veterans Court. He would have had to raise it a second time, Your Honor, because he did not appeal that matter before the Veterans Court, I would say. What's key here, Your Honor, is that Mr. Scott is asking for a hearing on the facts as they existed in 2008. The matter was remanded by the Veterans Court. But nothing changed about the hearing issue, right? Well, the facts were further developed, Your Honor. After a supplemental statement of the case came out, Mr. Scott responded to that supplemental statement of the case. The facts that he's saying would have been presented on appeal the first time around back in 2008, they're outdated. He had an opportunity to provide new facts to the Board and didn't do it if there are facts that still exist that he hasn't told. In fact, Your Honors, today he could file a claim. He won at the Veterans Court. He won remand. Correct. But he still had to show his claim and present his claim to the Board and the R.O. We're going to get a remand. I'm going back to the Board. And by the way, give me a hearing. He didn't ask for a hearing a second time, Your Honor. You're saying he should have. Correct, Your Honor. Correct. That's absolutely correct. He went to the R.O. He went back further, and there was a further examination.  There was no argument that the further request was improperly denied. There was an opportunity for Mr. Scott, through counsel, at this point he is represented, to provide facts in response to the supplemental statement of case denying him service connection for Hepatitis C. And Mr. Scott simply didn't do any of this. What's the standard for getting a hearing? He has to show. Well, he just has to request one, I believe, Your Honor. Then the facts that you're talking about didn't change that at all. I mean, all he had to do was request one. But he didn't, Your Honor. That's our point. He did not request one a second time around. Yeah, but was there a reason for him to request it since it had been denied the first time? Well, certainly he's saying that he has facts that could have been presented to the court, yes. Absolutely. It was remanded, and there was a new supplemental statement of the case, Your Honor. The old supplemental statement of the case, which he had originally requested a hearing on, was out of date. It was moved. So there's a new finding by medical examination, new things to discuss here. That kind of goes to the merits, though. Exactly, Your Honor. Right. So he raised, by way of motion, that I want a hearing. That was denied. And now you're arguing he never did raise the issue that he wants a hearing. Well, I'm going to back up further here for a second. The way this went, Your Honor, was there was a request for a rescheduling of his hearing that he did not attend. It was denied. Then there was an appeal to the Veterans Court. Well, he said, let me have my hearing on March 2009 because I'll be out of jail by then. And the court said, no, we're going to have it in March 2008 while you're still in jail. No, Your Honor, that's not actually what occurred. Mr. Scott gave all indication that he was going to attend the hearing in Houston in March of 2000, and I'm forgetting the date right now. Regardless, in the March 14th hearing. Now, it's not unusual for a prisoner to be able to attend a videoconference hearing outside a prison. Transportation needs to be arranged with the prison itself, and the prison needs to agree. Or the prisoner can send a representative in their place. Has this been a pervasive problem? Has this issue come up in other cases about ordering hearings while people are incarcerated? Your Honor, I'm aware of Veterans Court cases discussing whether or not an individual, excuse me, the Veterans Court gave the individual, you know, satisfied the duty to assist because the individual was incarcerated. I don't know if this is a pervasive problem, Your Honor, that hasn't come up. This is an overriding issue. This is the first matter that I'm aware of before this court discussing this exact thing. But the issue has come up at the Veterans Court. How often do veterans get hearings by videoconference when they're incarcerated? I'm not aware of any percentage along those lines, Your Honor. They are entitled to a hearing, and the VA must treat an incarcerated veteran like it would treat another veteran. They must have the same rights. There are, depending on what the prison says and what's possible, ways to get around giving the individual a videoconference. It all depends on the facts, facts that weren't developed below, Your Honors, because Mr. Scott never challenged this issue. He simply filed a motion. It was denied, and then he waited years before appealing it to the Veterans Court for a second time. So on this appeal before us, can you show me or can you tell us how the Veterans Court weighed the veterans' interest with those of the VA in arriving at this decision? Well, Your Honor, under the Bernklau case, there's no need to actually spell this out in the case, in the actual decision by the Veterans Court. In the reply brief by Mr. Scott, he argues that there's some inconsistency between Maggott and Bernklau, even arguing in a footnote that Bernklau is wrong. How would we review that decision, whether or not there's an error in weighing those interests? Well, Your Honor, I mean, there's a presumption of regularity. There must be, at first, a showing by Mr. Scott that there's some compelling evidence to actually rebut that presumption before this Court could ever look at it under Bernklau. And in this situation, Mr. Scott hasn't done this whatsoever. He simply said that because there was no actual detailed case-by-case analysis of the interests, then there must be reverse. You're saying that the Veterans Court does not have to have any detail? That's correct under Bernklau, Your Honor, yes. Now, the Bradley case that Mr. Scott raises, the Veterans Court wrote that decision before Maggott came out. It was written in 1999. Maggott is from 2000. So there was no presumption of regularity in that matter because that Veterans Court couldn't rely upon Maggott and what the law actually was. So it's a very different case than what actually happened with Bernklau, which came out, the Veterans Court came out after Maggott's decision in 2000 and relied upon Maggott. So therefore, there's presumption of regularity, Your Honor. So to what extent is the Veterans Court looking at issues in the record that weren't specifically raised by the Veterans Office here? Well, I think Robinson is a good example. We've got sidetracked, Your Honor, and I promise you in the beginning of this argument I would tell you about Robinson. In Robinson, the basic issue of service connection was raised. Before we get to Robinson, I didn't want to hear about that. My question is, under Robinson, to what extent is the Veterans Court finding things in the record that the veteran hasn't specifically raised? Do you have a sense of how often this is happening? Oh, overall, Your Honor? Yeah. Yeah, just anecdotally, I do not, Your Honor. To be completely honest with this Court, I have seen it before in cases, but I can't represent to this Court that the Veterans Court is doing anything beyond what is required to do in Robinson or anything like that. And what it is required to do in Robinson is once an issue has been raised, to reasonably interpret the filings, excuse me, let me take a step back here and say liberally interpret the filings of the claimant. It seems to go a little bit beyond that because the issue of secondary service connection was not specifically raised in Robinson, yet we said that that had to be addressed. Right, and the Robinson Court looked at the filings and liberally interpreted them, saying if this individual wants service connection, they also want secondary service connection. What Mr. Scott wants is to say that there's only one issue in this case in the Supplemental Statement of Case, and this is on 830 in the Appendix, and that is service connection with hepatitis C. Mr. Scott wants this Court and the Veterans Court to presume that when an individual raises disagreement with service connection, to presume that they're also challenging every procedural denial that occurred below. And that's far afield from Robinson, Your Honors. That's completely different. When, and turning to the reply brief for a moment, Mr. Scott argues that he challenged all the issues pointing to the Form 9. The Form 9 that he filled out, Your Honors, was from April 27, 2006, two years before the denial of his motion for rescheduling of his hearing. So at that point, even if that was sufficient to say I'm challenging every single issue, including procedural issues, it was two years before the procedural denial of this case. Beyond that, the Form 9 does not say all issues alone. It says, quote, I want to appeal all the issues listed in the Statement of the Case, and that's JA 30. The Statement of the Case has only one issue here, as I just noted a moment ago, service connection for hepatitis C, and that's JA 758. So, Your Honors, this is very different than the situation that you've hypothetically opposed, Your Honor. It's a procedural decision by the Board, an out-of-date procedural decision, because it was remanded. The Board met for a second time. There wasn't an R.O. and a second examination. And these facts that Mr. Scott said he was denied the opportunity to provide to the Board in the first instance, he could have provided and should have provided to the Board in the second instance. If the Court has no further questions, we respectfully request the Court affirm the decision. Thank you, Mr. Romali. Thank you. Ms. Nall. Your Honors, Form 9 controls the appeal from the regional office to the Board, and it is undisputed that Mr. Scott checked the box appealing all issues. But that regulation, that form… Was that in 2006, or did he do that later? That was in 2006. That is the only time that he was ever required under the regulations to check the box. When the Board remanded to the R.O. and after the Court of Appeals remanded to the Board, the Board said that he didn't have to do anything. It would automatically go back up on appeal to the Board. There was no form for him to fill out. There was nothing he needed to do to preserve that he checked the box appealing all issues. But that is an appeal of issues between the regional office and the Board. Appealing issues of error from the Board to the Court of Veterans' Appeals, there is no form that he has to fill out. All there is is this certification for appeal that appears in the record at 182 and 183. In 2012, when his appeal was recertified to the Veterans' Court, the letter said that it would be decided as quickly as possible, depending on, as a factor, whether a hearing was requested, past tense. And then the form at page 183 shows that it checks the box, was a hearing requested? Yes. There is nothing more that he was required to do to preserve this issue. And Your Honors asked whether there is a pattern of denying Veterans' hearings. If you review the Scott v. Shinseki case that appears in Mr. Scott's opening brief on page 33, footnote 12, that case has to do with a writ of mandamus where the veteran was incarcerated and requested a hearing at the jail because he was unable to get transportation. And the Board said, we cannot provide that to you at all. He filed a writ of mandamus. The Veterans' Court remanded or told the Secretary, why can't you provide this? A teleconference hearing is something that you allow by backup to your videoconference hearing. Why can't you allow it at the jail? And after many back and forth on this writ, eventually the Secretary said in 2014 that they would allow him to have a teleconference hearing at the jail as yet another test case. There's one other test case that they acknowledge ever happened. And so in 2014 was the second time they ever allowed a veteran to have a test case of a hearing at the jail. And there is nothing in the record to indicate that Mr. Scott knew before the day of the hearing that his request to get transportation to the hearing would be denied. When he told the Board that he would like to reschedule because he was unable to get transportation, it should have been more artfully said. It should have had more information. But he was pro se. He didn't know better, perhaps. And the Board never asked him for clarification. They never did anything to assist him. He was pro se, and they never asked him, why were you unable to get transportation? Why didn't you know that beforehand? They just denied it and said good cause has not been shown. And also, under Robinson, the CAVC should have determined whether this issue was reasonably raised by the record as a fact. That was not decided here. And this Court should vacate in remand for a finding of fact by the Veterans Court whether this was reasonably raised by the record, though, as a matter of law, an issue that the Board is required to address, statutorily required to address, should be always reasonably raised by the record. So the Veterans Court should have addressed, as a substantive issue, whether or not the Board provided an adequate statement of reasons. Why is the Board statutorily required to address the issue? The statute is 38 U.S.C. 5103A, which requires that the Board assist, and 38 U.S.C. 7104D1, which requires that the Board provide an adequate statement of reasons in basis. And also, looking at the decision from the Veterans Court, the language, there's two sentences with citations that address this issue. And it's not clear, even, that the Veterans Court was relying on issue exhaustion in this case. The presumption of regularity should not apply where you can't tell what the Veterans Court really did. The reason Mr. Scott argues that they applied issue exhaustion is that there is a citation to maggot in line after many citations. And that is the only case, they cite, that allowed the Veterans Court not to address an issue. But it's possible that the Veterans Court is just not allowing piecemeal litigation, which is not an issue of law. That's not a legal concept. If Your Honors have no further questions, Mr. Scott respectfully requests this Court vacate and remand. Thank you. Okay. Thank you, Mr. Arnold. Thank both counsel. The case is submitted.